Next case, 10-F, 2300, and the Detention of Susan Ehrlich. Counsel, please come forward and tell us your name and who you represent. Good morning, Your Honors. My name is Stephen Potts, P-O-T-T-S. I represent Stephen Ehrlich, the appellant. Thank you. Good morning, Assistant Attorney General Catherine Saunders, on behalf of the people. Thank you. Whenever you're ready, Mr. Potts. Thank you, Judge. May it please the Court. Good morning, Your Honors. My name is Stephen Potts. I represent the appellant, Stephen Ehrlich, who is the respondent in the underlying sexually violent persons case. I'm going to address the two most important arguments that I believe are laid out in the brief. Specifically, I will address why the State violated the implied covenant of good faith and fair dealing with regards to the underlying plea that Mr. Ehrlich entered into as part of his criminal convictions back in 1998. And as such, that violation of the underlying plea agreement by the violation of the implied covenant of good faith and fair dealing should have resulted in the dismissal of the sexually violent persons case herein back in 2001. In addition, Your Honors, I will address why the State's Rule 213 violation of production of information and opinion and medical information about Mr. Ehrlich less than seven days before trial was a 213 violation, which should result in a reversal of the finding of commitability of Mr. Ehrlich by the trial court judge. I'm prepared to answer questions on any of the other substantive arguments as well, but I'm going to try to focus my argument on the first argument as well as the third argument. Specifically, in the underlying case with Mr. Ehrlich, Mr. Ehrlich pled guilty in 1998 to a criminal sexual assault case. And in that case, he was in custody for a very substantial amount of time on that case. At some point in time on that case, he was offered what amounted to, essentially at the time, a deal which was a sweetheart deal for him at that time, which would have been essentially impossible for him to not go along with because of the amount of time that he was going to have to serve at that time. Which was, when he pled guilty, he served essentially 11 months in the Department of Corrections after that. Now, implied in all plea negotiations is that there's good faith and fair dealing. I cited that in my brief, that the state's got to act in good faith and the state has to negotiate in good faith in order to assure that due process is complied with. I think it's very important to take a look, and this is extremely unusual in any of these SVP cases, where you've got an instance where it's clear from the record that there was, at the time that the individual pled guilty in the underlying case, it wasn't just a possibility, it was definitely contemplated by the state that Mr. Ehrlich was going to be the subject of an SVP petition. When did that petition come down, though? When did they file it? The SVP petition? 1999. Right, so the plea was offered in March of 1998. Right. And then the petition came down in July of 1999? Sometime in mid-1999, that's correct. Because they have to wait until he's within a certain amount of time from release from the Department of Corrections before they can file the SVP petition, pursuant to the statute. But it's clear that when they filed the statement of facts, which I attached in my motion previously in front of Judge Wood in the circuit court, the specific statement of facts says, this offender clearly qualifies under the Sexually Violent Persons Commitment Act and that he should be the subject of a Sexually Violent Persons Commitment petition. So the issue is really not, and I know the People's Brief talks about whether or not this is a collateral consequence and whether or not there's admonishments that need to be required and whether or not those were necessary. I think that's one of the things they're trying to say. That's not the issue here. We're not arguing that Mr. Ehrlich had to be notified and admonished in the circuit court when he pled guilty to the criminal cases that this was a consequence of his plea of guilty. We're saying that what they did when they took that plea and agreed to that plea agreement with Mr. Ehrlich back in 1998 is that they acted in bad faith, because they knew at that time they were going to SVP Mr. Ehrlich and that that should have resulted in Judge Wood dismissing the Sexually Violent Persons petition. Judge Wood clearly was troubled by the issues that were presented in this motion. And I think that specifically he used the word sandbagging, I think more than once, that he viewed this as extremely troubling that the state in an instance like this could offer Mr. Ehrlich a deal like this knowing that they're going to do something to possibly indefinitely confine him in the Department of Human Services at the time that they're going to do this. The obvious, if you take this to its logical conclusion, the state could do this, could make a routine habit of doing this kind of conduct and plea somebody out who's got multiple prior sex convictions to the minimum on a charge, knowing that at the time that they do that, it's extremely likely that he's going to be the subject of a Sexually Violent Persons petition or the state's attorney in Cook County works in concert with the Attorney General's office. They could already be aware and they could funnel this information to the DOC evaluators who do the evaluation. Do you know whether they did that in this case? No, I don't. But I do know that when the DOC does their screening of all the master files, what happens is they screen the master files to determine whether or not somebody should be the subject of a Sexually Violent Persons commitment petition. What those screeners do do is they look at the statement of facts and they examine the statement of facts to see what the statement of facts is on their underlying criminal case. So the screeners... How do you take into consideration other cases, not just this case? Not just this plea? Oh, they consider other things. Yes, that's correct, Judge. But my point is I don't have any reason to believe, nor do I have any evidence, that the state's attorney called the DOC evaluators and said, hey, you need to look at Stephen Ehrlich to see if he's a sexually violent person. But they would have seen that in the master file because when they do the file screening to determine whether they're going to file a petition, they review the statement of facts. And the statement of facts says you should SVP this guy. There are many other things that they've reviewed other than that statement of facts from that one case, correct? No, that's no question, Judge. They do. But my point isn't that they didn't review other material. My point is that it shows that the state acted in bad faith and precipitated this SVP filing when they knew that they had offered him a deal that he couldn't refuse and they knew that he had entered into a plea agreement. And it's not fair to Mr. Ehrlich for what happened here. And this is not a typical case that's going to happen. May I ask, did the court commit error when they failed to admonish your client the possibility of the SVP petition being pursued? The court didn't admonish them to that effect at all, did it? No, Judge, they did not. Were they required to, in your opinion? Should they have? Yes. The court has an obligation to properly admonish a defendant. I think that the law in Illinois should be that they have to admonish convicted sex offenders. If somebody's going to plead guilty to a statute that's going to subject them to commitment under the Sexually Violent Persons Commitment Statute, yes, I think they should do that. Well, if we accept your theory that it was sandbagged, aren't we necessarily required to conclude that he was improperly admonished? No, you're not. Because this is not a situation where we're saying that the error here for Mr. Ehrlich's case was you didn't give him the admonishments, therefore he should automatically have this SVP petition thrown out. If he was properly admonished, how can your theory hold? Because your theory seems to rest on some sort of contract law. That's correct. Because I think even if he was properly admonished under the circumstances that they could still act in bad faith, how be it? It would be more difficult. Maybe under these circumstances he wouldn't have been able to argue this position if he had been admonished. But that's not what happened, and it was clear that the state intended at the time that they entered into this plea agreement that he was going to be the subject of a Sexually Violent Persons Commitment Petition. The issue of whether or not he has to be admonished, I think, I'm saying there's an affirmative duty upon the state at the time they struck this deal to affirmatively say, by the way, when you plea out on this, you're not going to be subject to an SVP. No. I'm saying what they have to do is they have to exercise their discretion and to enter into this plea with the intention that with no other side deals, knowing that they're going to actually extend his indefinite incarceration perpetually because they're going to file this petition. If the state's attorney wasn't going to do this and they weren't going to recommend it, they weren't going to push that Mr. Ehrlich be committed as a sexually violent person and that a petition wasn't going to be filed against him, the state's attorney in the case that actually entered into the plea agreement, this wouldn't be an issue. But that shows that they acted in bad faith when you look at the plea agreement that was given to Mr. Ehrlich. This was not the first time he had been sent to the Department of Corrections on a criminal sexual or sex crime offense. And essentially what they gave him at the time of the plea agreement in the criminal case was practically a turnaround. He practically went to the Department of Corrections and he came right back out, even though he had been a multiple-time convicted criminal sex offender. And the reason is because they knew they were going to do this to him. Counsel, if you're going to base any case law or statute, what are you basing your argument on here? Well, I'm basing my argument on the fundamental common law principles that the state has to exercise the obligation of good faith and fair dealing under contractual principles when they enter into plea agreements, which is essentially founded on due process concerns. What's the right thing that we need to do? And what is the right thing that we need to do with regards to somebody who's going to enter into these plea agreements? And are we going to be bound by due process and the covenants in contractual relationships to do what we say we're going to do? So is this the state's responsibility to advise people, and don't forget, if you plead to this, I know you're on probation, it's going to violate your probation, or whatever. Is that the state's responsibility whenever a plea comes forward? Well, I think that when a plea comes forward, I believe that in some circumstances, the courts have found now, and I believe that it's the obligation in Illinois now that somebody's got to give you admonishments about immigration consequences. And immigration consequences, that's not even the same sovereign as the people of the state of Illinois are. That's a totally different kind of consequence. It's not even by this, it's by a totally different entity. Oh, by the way, you may be subject to immigration consequences as a result of their plea, but they don't have to have any knowledge at all under these circumstances that not only are they going to be subject to very serious consequences, but it's going to be by the same sovereign that is going to take the action against you. Wasn't he represented by counsel? In the criminal case? Yes, he was. So isn't it the responsibility of this attorney to advise him of the effects of this plea? And again, that's not really the substance of my argument, even as the admonishment thing. But however, I will point out that at the time that he pled guilty, this is a brand new statute in Illinois. This statute was in its complete infancy. And most people don't even know what the SVP statute is now that are out there practicing. But at that time, there was really no knowledge as to what was going to happen with any of these cases under the Act. So our position is that fundamental fairness with regards to the underlying plea agreement is shown, the violation of fundamental fairness is shown, because this is a very, very unusual circumstance, because the statement of facts in this case makes it clear that it's a different circumstance. Now, with regards to the Rule 213 argument that I make in my brief, specifically, these are supposed to be civil cases. They're supposed to be treated like civil cases. The civil rules are supposed to apply. And the civil discovery rules are supposed to apply. That's not what happened in this case. What happened in this case is that the state, six days before this case had been ready to go to trial, and this case had been pending for seven years. So we're talking about a case that had been pending for seven years. Mr. Ehrlich had been trying to get to trial at this point. One of his prior experts had passed away, so that was one of the delays. But at the time, this case had been set for trial for months. And six days before the case was set to go to trial, counsel for the petitioner, the state counsel, tendered an updated report from Dr. Levitt and additional information from a treating doctor at the Department of Human Services facility, which Dr. Levitt relied on for purposes of his testimony. Wasn't all that information medical, not mental health related? Well, it was. But because medical condition is deemed a mitigating factor for purposes of recidivism, that's what the doctors testified to. They testified that mitigating factors for purposes of recidivism calculus are age, health, and sex offender treatment. But not like the health of the defendant was any news to him. He knew what his health condition was. Was this taken by surprise? Well, it was a new letter that had been given by the director of medical treatment for the facility that essentially said, well, Mr. Ehrlich is getting better. Mr. Ehrlich is improving. He was terrible before, but now his health is essentially improving. That was a letter that was produced by the facility doctor. That was given to Dr. Levitt, and then Dr. Levitt produced a new report that I got six days before we were going to go to trial. He shouldn't have been allowed to testify to any of that stuff that was contained in the new report. Didn't the court offer to give some time for his deposition to be taken? They did, and that's the state's counter to my argument. But we were ready to go to trial for months and months and months. And if this is supposed to be governed by the rules in Rule 213, there's an obligation on them to justify why they're producing this so late. And there's a case out of the 2nd District called Warren v. Milsop, which is 304 LF 3rd 260, which addresses a situation in a civil case almost exactly like this, where they produced information, an expert report, 11 days before they were going to go to trial. And the defendant in that case specifically argued, well, he was given the opportunity to take a continuance, and he could have continued his day in court. And the court in that case said no. The court in that case said that is not fair, that is not compliance with the rules, and if you were going to produce this information before, you should have done it. And we're going to make you comply with the rules, because what you're doing violates the spirit of the rules. And if truly what we're doing in these cases, in these SVP cases, is that we are civilly committing these people in these cases, the state should follow the civil rules. And the state should be required to comply with those rules and treat these as civil cases if that's what we're doing. What's the burden in this case? Beyond a reasonable doubt. Right, so it's kind of a hybrid, isn't it? The civil rules apply, but the standard of proof is beyond a reasonable doubt? It's not, though, because if it was, then why wouldn't it say that the criminal rules apply, and why wouldn't we apply all the criminal rules? Well, the burden is high. I understand where you're coming from, Judge. I think it's interesting the way this is all written. But from a practical point of view, if these cases are going to be litigated and we're going to do fairness to these respondents in these cases, we need to make sure that what we're doing here is appropriate under the statute and appropriate under the Supreme Court directives, which the Supreme Court says that these cases are supposed to be civil. And they say that we're supposed to be committing these people under civil proceedings, and that these are not supposed to be punitive cases. Well, if we're not supposed to, then we need to follow the rules in these types of cases, and we need to make sure that the state complies with these rules and understands that it's not just lip service when we call these cases civil cases. But doesn't the Court have the discretion to do what's best looking at the particular circumstances and do substantial justice among the parties? Can't the Court do that in discovery issues? Of course. Yeah. So is that what the Court did here? No. It's not what the Court did here. Well, you want this to be a hard and fast rule, then? Well, what I want is I want the state to comply with the rules and not produce reports six days before trial when the case has been set for trial for months. But the state does these trials all the time in the civil side of things, you understand. And then it's up to the Court to decide, do you want to take his death, what do you want to do, how do you want to, you know, that kind of thing. The Court can do that, as it says in 218C, to do substantial justice between and among the parties. It says it's to be liberally construed. I agree. Yeah. And you had an opportunity to take him to continue the trial for a little while and do a deposition here, didn't you? I did have that opportunity. And you chose not to do it. So, you know, as Justice Connors pointed out, in civil cases we don't like that it happens all the time, but it does happen all the time, that something comes up fairly close to the trial date, and that's why the trial judge is there, so that he or she can make a decision about how to handle that situation going forward. That's the rules allow them to do that. So in this case, had you been able to get, if you had availed yourself of the opportunity to take a continuance and take this deposition, would we still be arguing about this issue? I don't think we would. However, Mr. Ehrlich had been waiting for trial, in this case, for seven years. We had been ready to go to trial. My point exactly. If he was waiting for seven years, if you delayed it a little bit longer, would that have made such a difference in the grand scheme of things, that you were not willing to avail him of that opportunity? I mean, that's my point. I think that what would have happened in this case is that the case would have been continued for a long time, because I had a doctor... How do you know that? Because you didn't take the opportunity, you didn't take the judge's offer. Because my doctor at the trial of this case was in Indiana. It's extremely difficult to get these cases scheduled for trial, because you have doctors that come from all over Illinois, two doctors in this case, and my doctor is from Indiana. You're looking at a continuance in a case like this for at least six to eight months. That's just how it works in these types of cases, because these doctors are coming from all over different areas. And that's why this case took... One of the reasons it took so long to try the case. I understand your point, but you'd have a strong argument if you had at least made the effort, if you tried to, you know, and then it couldn't work out, and then it's, well, you know, the state really got a free pass. But the judge tried to do what the rules allowed him to do, which is to allow you some flexibility to try to level the playing field. And you chose not to avail yourself of that opportunity. And now you want us to fix that. And I'm not sure that the law allows us to do that. So, anyway, continue with your argument. Okay. But I think that undermines what I'm saying here, as though that it shouldn't have been our responsibility to have to take time. First of all, the state didn't explain why they didn't get this stuff to us in a sufficient manner to get it to us with timeliness in this case. They just produced this new report, produced this letter, because they just didn't care at the time as far as whether or not it was even going to delay the case. They knew the case had been set for all this time. And there was really no good explanation as to why they engaged in this kind of behavior. This is not proper for them to do this at this point in time, in the trial, when we were ready to go. I had a witness that was coming in from out of town on the case. Now, with regards to the other arguments, if the court has any questions, I'd be happy to answer those. I think they're fully laid out in the briefs. We would request that the court consider all the issues in this case and that the court reverse the trial court's ruling in this case. Thank you very much. Thank you. Thank you. May it please the Court. There is no bar. Please state your name, counsel. I'm sorry. Assistant Attorney General Catherine Saunders for the people. There is no bar to respondent's commitment in this case. As I understand respondent's argument, it's essentially proceeding on two points, a bridge of contract sort of an argument, and a fundamental fairness argument. If you look at the entire transcript of the plea bargaining, which is found in C187 and 199, you will find that there was no promise made by the state that they would not seek respondent's commitment to the act. I don't think that's what your opponent is contending, counsel. He's saying that there is an implied covenant of good faith and fair dealing and that the speed with which the state filed the SVP petition afterwards infers that you weren't acting in good faith because you must have known beforehand that this is what you were going to do. That's how I understand his argument. So he's not saying that you made an over promise. Okay. The speed with which the state filed the petition is governed by statute. It has to be filed, I don't remember the exact window of time, but 30 days before or 90 days after. So the timing of the petition is governed by statute by the act. As for whether the people acted in good faith, at the time of respondent's guilty plea, his commitment, his eventual commitment, was anything but a certainty. All that was guaranteed at that point was that his master file would be reviewed because that's required by law. Anyone convicted of a sexually violent offense within approximately 90 days of their release on either MSR or eventually discharge has a file review conducted by the DOC psychologist. Some small, I'm sorry, go ahead. You know, your opponent talked a bit about the judge's use of the term sandbagging. What do you say about that? Because I was perplexed by the use of that term, too, by the judge. What do you think the trial judge meant by that? Oh, I'd point out, first of all, that same judge denied counsel's motion to dismiss on this very ground. Yeah, but what do you think he meant by the term sandbagging? Your Honor, no, absolutely not. Of course, he was going to be, by law, the statute had gone into effect in January of 1998. By law, he was going to have his file reviewed. The process just does not work that way. The fact that the state's attorney thought, I was asking a specific question about what you think the trial judge meant by that term because that's an unusual term, and he used it a couple of times in the context of that hearing, and I want to know what you think he meant by that. What I think he meant by sandbagging, I think he was unfamiliar with the Act and perhaps was uncomfortable with the Act. As my opponent mentioned, it was, in fact, a new statute at that time, the Civil Commitment of Sexually Violent Persons, and he perhaps misunderstood the nature of the commitment. As I said, his eventual commitment was anything but a certainty. The O.C. reviews the files. Some subset of those people whose files are reviewed are referred for an additional in-person interview. Based on the result of that, some subset of those people are referred to the Attorney General for possible commitment. At that point, the element of prosecutorial discretion, of course, comes in on the part of the Attorney General whether to pursue commitment or not pursue commitment. Any argument that his commitment was a certainty and that the people knew they were going to go out and get him simply does not hold water in light of the statutory and procedural process here. The only thing that was guaranteed, and this was guaranteed by law, was that his master file would be reviewed. But you would never know ahead of time whether in all of these cases, and as you pointed out, that was a fairly new statute at the time, the review process would always take place as you describe it. Just the initial file review. There's no guarantee beyond that initial file review, Your Honor, that that particular defendant will be referred for an in-person interview. There's no guarantee based on that interview that he will be referred for commitment. And there's no guarantee that even once he's referred for commitment that the state will seek or pursue commitment proceeding. So the only thing that's guaranteed is that initial file review, and that's guaranteed because it's by operation of law. Your opponent says that the initial file review almost, especially in this case, almost I guess makes it a certainty because right in the factual statement it says, you know, it's suggesting an SVP petition be filed. So the state, it's like an implied agreement between the state's attorney and the attorney general that's written right into the document. That's his argument as I understand it. I have two, at least two points to make on that point. There was no, there's no indication of any implied agreement between the state's attorney and the attorney general. That was simply the state's attorney, the assistant state's attorney, who drafted that statement of fact. There was no implied agreement. As to the remainder of it, excuse me, I have a little bit of a cold. It's a gross oversimplification because the statement of facts, if in fact it was among the record in the master file, there are thousands of pages of documents, all the transcripts and all the statements of facts for all of petitioners or respondents, I'm sorry, sexually violent offenses, all the details of his offenses. And what the psychologist is looking for is not a recommendation. What the psychologist is doing is looking at the facts of his prior offenses, the actual underlying, not the fact of the offense, but the facts surrounding the fact that he molested little children, etc. He's looking at those facts, the psychologist is looking at those facts to make a mental diagnosis to determine whether this particular respondent suffers from a mental disorder as defined under the act. So at that point, the fact that one assistant state's attorney thinks it would be a good idea to seek respondents' commitment is really irrelevant to the DOC psychologist's objective at this point in reviewing the file. If there are no further questions on that point, I'd like to briefly address Respondent Section 213, our argument. May I ask, a lot of this is rather new to me, but let me ask you this. If at the time of his taking the deal on this offense, would it have been enforceable if part of the deal was that he will not be subject to an SVP? I would argue no, Your Honor. A, that the state's attorney couldn't bind the attorney general as a separate prosecutorial body, and B, that it would be unenforceable as a matter of public policy. You're telling me that the SVPs are prosecuted by the attorney general's office. Generally, in Cook County, however, it's generally a joint effort with the state's attorney's office. But in the remaining 101 counties, generally the attorney general does it on their own. So even had that been expressly provided in the deal, you don't believe that it would be enforceable? No, it would not be enforceable because it's specifically required by law that these files be reviewed. And I would argue that it would be unenforceable as a matter of public policy, that the legislature has intended that this procedure go forward with respect to certain individuals. I'm returning to Respondent 213's argument. Any error here was invited error. Judge? How is it invited when you turn over the document six days before trial? Pardon me? They claim that you turned over information six days before the start of trial. My understanding from the record is that Dr. Levitt had updated his report. This case was going on, obviously, as Your Honor noticed earlier, since July of 1999. And so the DOC expert, or the DHS expert, I'm sorry, periodically re-evaluates and updates his report. And, yes, Dr. Levitt's 2006 updated report was apparently from the record filed very close to the time of trial. Yes, but how do you, why do you characterize that as invited error? Because they got the report when you gave it to them. The error is on Respondent's part. That would be, I'm willing to assume the application of Rule 213. That would be inappropriate, yes, to come in. I would concede that it would be inappropriate to come in with a report. However, when counsel raised this to the court, Judge Beeble said, well, I need this updated information. Dr. Levitt's last report is from 2004. I need to have this updated information. So here's what I'm going to do. Counsel, I will allow Dr. Levitt to be redeposed, and this is on page, I believe it's 123 of the record. I will allow Dr. Levitt to be redeposed, if you're willing, on the basis of whatever information you can gather, and we can move forward if you want to do it that way. If you want to do it that way, to take the element of surprise out of it. He says, look, this is Judge Beeble. I'm the judge that has to make the determination I want. Full information. And we agree that the judge gave, you heard me ask your point. Yes. The judge gave him an option to continue the trial while he took the death of the doctor who had submitted the slave report, and he chose not to do so. But my question is a little different. I mean, basically the state really gave them this material late, and do you feel that you have any responsibility for complying with 213? Granted, the trial court has a remedy, but, I mean, you get a free pass because, you know, okay, we gave it to you late, and if you don't want to continue it, that's your problem. Is that what you're saying? No, Your Honor, no. The invited error? Again, the error, I'm willing to concede the state's error, but the invited error is on Respondent's part when presented with this remedy. He did not partake of it. What about the question that you didn't, that 213 requires you to give, at least the way 213 has been interpreted, requires you to give some explanation as to why you're producing this so late, and the state didn't give one. Can you just say, here it is, and it's six days before the trial? I believe that's incorrect, and not to put it by the record. My understanding is that Dr. Levitt was waiting for a report from the DHS doctor, the medical doctor who was treating Mr. Ehrlich's many physical infirmities. I believe it was Dr. Anwahoo. I'm sorry, I can't pronounce the name. So Dr. Levitt had completed his report, in fact, and was waiting for that updated medical report from the DHS doctor. And it's another point I want to make here that's very important to note, that there really wasn't change in Dr. Levitt's opinion. Dr. Levitt's opinion remained the same, that Respondent suffered from pedophilia, that he had a personality disorder, that he was substantially probable to re-offend. The only thing that changed in Dr. Levitt's opinion, his 2006 updated report, was that he had updated the Respondent's age from 2004 to 2006, and he noted that Mr. Ehrlich was, his health was somewhat improved, and that he was able to walk with a walker some of the time, and not, excuse me, confined to a wheelchair. And those are facts that counsel would have known, and did not need to rely on Dr. Levitt's report. Counsel, when you make that argument, it suggests to me that you're saying, okay, nothing's changed, so we can give them the report later if we want to. That's what that sounds like to me. I hope that's not what you're saying, that it's okay to produce this six days before trial, because you believe that nothing has changed. I'm not defending the state's late production of this report. I'm explaining why it happened. They were waiting on the DHS doctor's report. Judge Beeble said, look, I want this updated report. I can't make a determination on this important issue without this updated report. I offer this procedure. Counsel said, no, I want to proceed today. Okay. Now, counsel questioned whether invited error doctrine, whether the application would be appropriate in an SBP case, and it absolutely is an in-rate detention of swabs. What about his argument that it's not a matter of continuing it for a day or two while they take the death, but the sequence of events that would be set at motion would, in fact, continue the trial for another length of time, I think he said six to eight months, and this person had already been incarcerated for a long period of time, and they wanted seven years, and they wanted the case to move forward. Your Honor, I take issue first with the use of the term incarceration, because he was in civil detention. Okay. And second of all, much of the delay, and there was a good deal of delay here, much of the delay was occasioned by respondent in his many, many motions, seeking procedural motions, seeking to somehow avoid commitment. And so to say that this is the state delaying these proceedings would be inaccurate. And this one aspect, it was a potential delay at the most. If the Court has no questions on any other issues. Thank you. Thank you very much. We'd ask you to defer. Thank you. Mr. Potts, a brief reply to your mother, please. May it please the Courts, Your Honor. I will be brief and touch on some salient points that were brought up by counsel in her argument. First of all, I'd be happy to tell you what sandbagging means in this case, and what Judge Wood thought sandbagging means. What sandbagging was meant in this case by Judge Wood is we're going to do something and we're going to keep something hidden, and then we're going to spring something on you at the last minute after we've convinced you to do something otherwise. And that's what he meant. It's the common use of the term sandbagging is we're going to hide something. You hear it over at the Daily Center and at 26th Street all the time. Counsel, I'm not going to let you sandbag your opponent and hold on to this at the last minute and then give it to him right before on the eve of trial. Counsel, I'm not going to let you have Mr. Ehrlich rely on what the state tells him they're going to do, knowing we're going to do just the opposite of that, and then file an SVP petition. That's what sandbagging means. And that's what Judge Wood meant when he said sandbagging. Judge Wood was troubled by this. It was obvious that he was troubled by this. And that's why he said that. Now, with regards to, I just wanted to touch on a couple other things. Counsel answered a question which I thought was extremely troubling with regards to whether or not if a state's attorney entered into an agreement with a defendant where they would agree not to do this. They would agree not to file a sexually violent person's commitment petition. Justice Harris asked that question. I think the obvious conclusion has to be, of course, they would be barred from filing an SVP petition. We're not talking about a different sovereign here. The people of the state of Illinois are the ones in a criminal case. In this case, when it's filed, it's filed in the criminal division, and the petitioner is the people of the state of Illinois. And not only that, in Cook County, both the state's attorney and the Attorney General's Office are the ones who handle these cases. It's not like we're talking about the Department of Immigration filing something against these people, and if you put that in a plea agreement, you can't enforce that for purposes of the Department of Immigration. It defies logic that the state's attorney would be able to say to a defendant in a criminal case, you know what, as part of your criminal case deal, we are not going to file a sexually violent person's petition against you, and then turn around at the release date, at the time that they're going to be released and serve them with a summons in a sexually violent person's case for potentially involuntary commitment for the rest of their life. One moment. You're faulting the state for not advising him at the time of the plea that he's going to be subject to the SVP. So it raises in my mind an additional question. Is this a provision that is commonly given when such deals are made? Is it commonly given that we're not going to proceed on the SVP? I mean, you're forcing, you want the state to be the counsel for the defendant in this case. No, I'm not. That's not what I want. What you're saying, good faith requires them to act in this ultra-high regard and advise him of everything in the world that could possibly happen after the trial, after Ennis's plea? No, that's not what I'm arguing. I'm arguing that the state can't So I'm asking you, is it commonly done that they include a provision we're not going to SVP? It's been a while since I've done a criminal sexual assault defense case at 26th Street, Judge. It would be rather unique, I would think. I have never seen it, but I haven't done a sex case other than these cases at 26th Street for years. So I don't know the answer to that, Judge. But I do know that when the, and another thing I wanted to point out was when these psychologists from DOC do their report and they do an evaluation, they take the statement of facts that are in the statement of facts for the last conviction that the person was sent to the Department of Corrections on, and they literally cut and paste everything that's in the statement of facts into their evaluation and into their report. So the statement of facts is an absolute integral and essential part of that report, and the doctors in those cases rely on the statement of facts to a very high degree when they write these reports. So the doctors are going to go through documents in the master file, but if the state's attorney puts into a statement of facts that this offender clearly qualifies under the Sexually Violent Persons Commitment Act, that's just not another line somewhere floating around in the master file. That's something that sets off all kinds of bells and whistles and red flags to the IDOC psychological evaluator. Well, was this doctor, did that doctor testify that prepared that report? The HMS doctor? You know, I can't recall, Judge. But wouldn't that be part of the cross-examination? Wouldn't that be the thing you'd want to do? Why did you only rely on that? Well, it's not that they only rely on that, but they put that in there and then they testify. And they don't necessarily testify that that was in there, but that's always in their evaluation is what happens. My point about that is that it's not just that this is a line somewhere in a 1,000-page master file, but this is something that specifically would have come to the attention to the evaluators. Do you think the state's attorney has the power to make that promise that you will not be prosecuted under the SVP? Is that even possible? Yes, I do think it is possible. It's discretion. They can non-suit an SVP case if it's filed. They do it all the time down there. After it's filed, what I'm saying is it doesn't have to be sent over for investigation. All that happens when it comes over is that they're referred or not referred. Whether or not they're going to actually file is ultimately the decision of the attorney general's and the state's attorney's office. It's completely up to the office. There's no requirement that they have to file. What if they refer it from a stack, scaling against the defendant, and the state decides not to proceed? There's no... That's my understanding of the Act. They have to exercise that kind of discretion. That's my understanding, Judge. My understanding is that there's no requirement on the state that they have to file an SVP petition under the Act if there's a refer evaluation. That's correct. It's just like filing a case. It's supposed to be just like filing a regular civil case. They do the evaluation, and then the prosecutors... Because sometimes you'll get an evaluation that will come back in these cases, and they'll say non-refer. And the state's attorney will look at all this stuff, and they'll say, uh-oh, we've got to send this back to DOC because we've got to get another evaluation because this guy looks really bad. And then they get another evaluation that says somebody should be SVP'd. So the state's attorney's role is integral in filing these petitions. And it's not... There's not this hands-off process that the government would make you think that happens in these cases. It really is you saying on the one hand you're going to do something and doing something different in the case. Your Honor, if you don't have anything else, again, we would request that the sexually violent person's commitment of Mr. Ehrlich be reversed on appeal. Thank you both for your argument. This case will be taken under advisement. Court's adjourned.